## BLUEBELL IMPORTING CORP v MYERS et

Ohio Appeals, 2nd Dist, Franklin Co

No 2836. Decided May 9, 1938

A. G. Newcomb, Cleveland, for plaintiff-appellee.

W. K. Sullivan, Cleveland, of counsel, Herbert S. Duffy, Attorney General, Columbus, Herman G. Kreinberg, Cleveland, Morton B. Icove, Cleveland, Asst. Attys. General, for defendants-appellants.

## OPINION

By GEIGER, J.

This is an appeal from the Court of Common Pleas in an action wherein appellee sought and obtained a declaratory judgment, on questions of law and fact. The pleadings of both parties are voluminous and in connection therewith there are agreed statements of facts as well as depositions. We shall endeavor to state the matter as briefly as possible for its proper examination and in doing this shall have recourse to the agreed statement rather than the pleadings. We shall refer to the parties as plaintiff and defendant.

The plaintiff is engaged in selling to the Ohio Department of Liquor Control liquors shipped into Ohio and placed in warehouses within the state, designated by the Department. A controversy exists between the parties as to whether the plaintiff is doing business within the State of Ohio within the meaning of the Foreign Corporation Law and all parties are desirous of securing a declaratory judgment establishing the rights of the plaintiff.

Prior to March, 1935, the plaintiff was engaged in selling liquor to the department under direct sale methods; that subsequent to said date the department enforced the method known as "the Ohio Bailment Plan." Plaintiff cannot and does not sell to any one in the state except the department, and liquor so sold is shipped into the state from points outside and consigned to plaintiff at a warehouse designated by the department; that said Bailment Plan was

adopted for the exclusive use of the department promulgated for the purpose of enabling the department to conduct its business with an adequate supply of liquor available with a minimum amount of capital necessary; that the plan is the sole method by which the plaintiff may sell liquor to the department and when adopted a letter was sent to all distillers.

That in 1934 the department executed a contract with the Cincinnati Terminal Warehouse Company; that the plaintiff has no contractual relations with such warehouse; the department has covenanted that it will use the warehousing facilities exclusively for storing and handling of liquors which it may acquire, paying to the warehouse fees provided for handling and storing the liquor, the department paying the first thirty days warehousing charges and thereafter the plaintiff to pay said charges, it being the policy of the Liquor Control to have a supply of liquor stored in the warehouse not exceeding thirty days; that under the contract the warehouseman exhibits over the bailment stock shipped by the plaintiff, signs to the effect that the liquor stored herein is the property of the Department of Liquor Control of the State of Ohio; that the first stage of purchasing liquor from plaintiff is a "consent order" addressed to the plaintiff in New York; that prior to the issuance of such order the plaintiff sends to the department an application to ship to the warehouse a certain quantity and grade of liquor and if the department approves it issues the consent order. The plaintiff then ships to the warehouse designated by the department the quantity and grades of liquor specified in the consent order. The price to be received by the plaintiff is agreed upon before the consent order is issued. Shipments are forwarded from points without the state of Ohio to the designated warehouse consigned to the plaintiff in care of the Ohio Department of Liquor Control; that one of the terms of all such sales is that they shall be shipped "f.o.b. warehouse with all Federal taxes paid"; that the revenue stamps should bear the legend, "bottled for the Department Ohio Liquor Control," which regulation was afterwards modified to a stamp supplied by the department and sent to the plaintiff with the consent order in numbers sufficient to cover the requirement of the order.

That when the liquor arrives at one of the designated warehouses it is deposited in a convenient location and from said stocks the warehouse fills withdrawal orders issued to it by the Ohio Department of Liquor Control, all such liquor being held for the exclusive purpose of being applied upon withdrawal orders issued by the department; that while the liquor remains in the warehouse it is held for the exclusive use and appropriated to the needs and requirements of the retail stores and customers of the department and the warehouseman will honor no order except from the department. Sole custody of the liquor rests in the warehouseman and sole right of disposal rests in the department, the plaintiff having surrendered all right to control or dispose of any part thereof while in the warehouse, but may withdraw said liquor for shipment out of the state when the department consents.

That the department effects the withdrawal of such liquor as it may desire for its customers or for the state stores by issuing to the warehouseman a shipping authorization, upon the receipt of which the warehouseman allocates such liquor from the stock on hand and the same is removed from the warehouse and sent to the place indicated by such requisition, upon which the warehouse issues a distiller's receipt, a copy to the department and another to the plaintiff; that such withdrawals are made without any communication by any one with the plaintiff and at the sole cost and expense of the department; that the department then mails a "purchase order" in duplicate for the liquor which it has withdrawn, to the plaintiff in New York City, and when the plaintiff receives the same in New York it confirms its acceptance by sending to the department at Columbus an invoice for the liquor covered by the purchase order, upon receipt of which a check is issued by the treasurer of the state and sent to the plaintiff at New York; that the department withdraws from the stock of liquor in the various warehouses such merchandise as the state stores and its customers require and that before shipping said liquor into Ohio it is understood that said liquor will be withdrawn from the warehouse by the department in accordance with those needs and requirements; that the plaintiff ships no liquor into the state except such as is shipped under the so-called bailment plan and has no transactions or communications with any one in Ohio except such as are incident to such plan.

There is a supplemental agreed statement, only a small portion of which is pertinent. It is agreed that the warehouseman

make daily reports of the liquor shipped by the plaintiff to the department, showing the amounts, grades and brands received on a particular day, together with the consent order; that the plaintiff expressly or impliedly permit the warehouseman to release the liquor shipped into the bailment stocks on the order of the Department of Liquor Control.

There are numerous exhibits attached which will be commented upon as and if they become pertinent.

In their amended petition based upon these facts the plaintiff prays for a declaratory judgment determining the rights, status, interest and legal relations of the plaintiff, determining whether the plaintiff is or is not doing business within the state of Ohio within the meaning of the Ohio Corporation Act; determining whether or not it is subject to the penalties of said Act and this is the question presented for the determination of this court.

The facts may be briefly stated:

The Ohio Board of Liquor Control had a monopoly of the purchase and sale of liquor within the state of Ohio prior to the so-called bailment plan. Plaintiff sold liquor direct to the Liquor Board and during that time it was conceded that it was not doing business within the state of Ohio so as to render it liable to the Foreign Corporation Tax. After the bailment plan, a "consent" order was issued from the purchasing department of the Liquor Board upon receipt of which in New York the plaintiff loaded the liquor on cars consigned to itself at the designated warehouse in Ohio. Thereupon the liquor so received was designated by signs stating that it is the property of the department. All of such liquor was held for the sole use of the department and was released by the warehouseman on withdrawal orders issued by the department, the plaintiff having no control of its disposition, and was only permitted to withdraw the same for shipment to points outside the state on order of the board. Upon receipt of the withdrawal order the warehouseman segregated the requisite liquor and delivered the same as ordered by the department. And thereupon followed the statement made by the department to the plaintiff in New York of the disposition of such liquor upon the receipt of which the plaintiff billed the state of Ohio for the amount due for such withdrawn liquor and the state thereupon paid out of its own funds the amount due to the plaintiff. Incidentally the state received the money necessary to pay the first

month's warehousing charges by adding the same to the price of the liquor as originally quoted by the plaintiff. There are many other incidents to the transaction but we feel this is enough to exhibit the question for our determination which is, as before stated, whether this transaction upon the part of the plaintiff is such a business transaction within the state of Ohio as renders it subject to the tax, or whether it is simply an interstate transaction complete so far as the plaintiff is concerned when it places its liquor on board cars in New York designated or consigned to itself at a designated warehouse in the State of Ohio. The plaintiff claims that the whole bailment plan is simply a device by which the state is to have available liquor in warehouses for the supply of the demands upon it without having to pay for the same until the liquor is finally withdrawn from the warehouse..

## THE EXHIBITS

We will briefly scan the exhibits attached to the agreed statement of facts. Exhibit No. 1. Consent is hereby given by the Department of Liquor Control of the State of Ohio to——to import and transport via.———, the holder of an H Permit from ———(City or Town or State) to—— to the following warehouse (then follows a designation of the class and quantity of merchandise covered by the consent). Permit H is a permit to a common or contract carrier to transport or import intoxicating liquor in this state for delivery or use in this state.

Exhibit No. 2 is "a warehouse shipping authorization and invoice to stores" and requires no comment.

Exhibit No. 3 is "a purchase order" signed by the Ohio Department of Liquor Control ordering certain articles on the conditions named. Under the heading "bill of lading" it is provided that all bills of lading must show purchase order number, and directs that one copy of the bill of lading be forwarded to the warehouse and it is further provided that "all liquor shipped pursuant to this order" is warranted and any part may be returned by the department to the seller under certain conditions and it is further provided that this order is not binding unless confirmed by the seller within five days.

Exhibit No. 4 is a contract with the warehouseman and was executed on the 20th day of March, 1934, between the Department of Liquor Control and the Cincinnati Terminal Warehouse. It will be observed

from the date of this contract that it was made prior to March 1935, and on which date the plaintiff was engaged in selling liquor direct to the department. While the contract was made prior to the date of the establishment of the Bailment Plan, it has been amended since so that we may assume that it is the contract with the warehouse covering all liquor whether bought direct or under the terms of sale involved in this proceeding. It recites that the department is authorized to maintain a state monopoly of the distribution and sale of liquor through a system of state liquor stores, and that in pursuant of its duties it desires warehouse facilities at certain points.

By the provision of the contract the department agrees that during the period of the agreement it will use exclusively warehousing services furnished by the warehouseman for the handling of liquor which the department may buy, import or otherwise hold.

The warehouseman agrees to furnish facilities at designated points and to receive, unload from cars and place in storage all liquor forwarded by the department for storage and securely store the same in the warehouses and issue and deliver to the department non-negotiable warehouse receipts for such liquor; that it will not permit the liquor of the department to be commingled with like property of other persons; that it will place above the liquor of the department signs reading, "the liquor stored herein is the property of the Department of Liquor Control of the State of Ohio"; the warehouseman agrees to make warehouse platform delivery to parties designated by the department as it may be ordered by the department obtaining from each carrier to whom the liquor is delivered on the department's order a receipt on warehouseman's form for all liquor so delivered. The warehouseman agrees at its expense to furnish burglary insurance in the name of the department and loss payable direct to it. The department agrees that its expense to carry other classes of insurance on all liquors stored with the warehouseman and the warehouseman agrees that at its expense it will maintain a representative in Columbus in an office furnished by the department, whose duty it shall be to assist the department in coordinating the warehouse work. The department covenants to pay the warehouseman six cents per case for handling, and five cents per month for storage.

It is agreed that all liquor delivered to the warehouseman shall be and remain the exclusive property of the department to be stored for its account and subject at all times to its control.

Exhibit No. 6 is a warehouse receiving report and needs no comment.

Exhibit No. 7 is a sample purchase order dated March 6, 1934, to the Bluebell Importing Company, stating, "Please supply us with the following articles enumerated below, and note the following condition"; to be delivered at warehouses designated and signed by the department.

Exhibit No. 8 is the regulation of the department covering many pages, but we find nothing helpful in it.

Exhibit No. 9 is a letter from the Department of Liquor Control dated February 15, 1935, presumably going to all distillers furnishing liquor to the department, in which it is stated that the department has decided that our distillers must themselves take care of the warehousing of the merchandise by placing bailment stock in the public side of the department's five warehouses and it is further stated that it is hoped by this change in handling stock to reduce our inventory to such an amount as will permit the department to pay in full for its reduced stock within sixty or ninety days, after which it is expected that it will go on a discount basis. It is further stated that the adoption of this plan should by the maintenance of a sufficient warehouse stock overcome the experience of running out of some brands. The cost of moving into the warehouses is to be paid for by the distillers.

The provisions of the said Bailment Stock Plan as transmitted to dealers, appear from an exhibit attached to depositions in substance as follows.

When listing a new brand the following clause is included in the purchase order "the Ohio Department of Liquor Control reserves all privilege to return to the vendor all merchandise if at the end of ninety days the sales are not acceptable; a transfer stamp of the insignia of the Ohio Department shall be affixed to each bottle; at the time a consent order is issued the department shall ship requisite number of stamps at a charge to be made. It is stated that the technical advisor of the department will issue a consent to ship your merchandise into five warehouses. This merchandise is shipped in your name c/o Ohio Department of Liquor Control, and is your property until withdrawn by the Department of Liquor Con-

trol." The department pays no warehouse or storage charges. When the department withdraws the merchandise from bailment stock the warehouse issues receiving report to the department. Upon receipt of the purchase order the distiller is to invoice the department for each purchase order in duplicate, returning one copy with the invoice to the department; upon receipt of same the department will authorize payment of the merchandise with certain exceptions; any insurance on merchandise in warehouse to be at expense of distiller "as it is their property until withdrawn from bailment." Responsibility for adequate warehouse inventories is that of the distiller. Merchandise can be shipped into the warehouse in any quantity at any time, obtaining a written permit of the department. Advice is requisite of the amount of each brand to be shipped during a definite period to each of the five warehouse points; merchandise can be transferred from warehouse to warehouse at the expense of the distiller and withdrawals for shipment out of the state can be made upon written authority of the department; ten cents per case for the first month's warehouse charges is added to the delivered price of the merchandise. Samples for analysis are taken periodically from the warehouse, same to be charged to distiller. Certain forms of label is prescribed.

## DEPOSITIONS

In addition to these exhibits certain witnesses testified as to facts and conclusions which of course must be controlled by the agreed statement of facts where there is a variance. There are only a few matters developed by the witnesses which need comment, which will be stated without assigning them to any particular witness. The insurance and storage is paid by the Bluebell. The distillers can change the price after the liquor has been delivered. The price at the time of the withdrawal controls. The liquor may be removed from one storage to another by the distillers. The liquor belongs to the distillers.

In speaking of the adoption of the Bailment Plan it is stipulated on page 21 "We will stipulate that said plan was adopted for the purpose of enabling said department to conduct its business with an adequate supply of liquor readily available for its needs with a minimum amount of capital necessary for the transaction of its business." It is testified on page 26 that the distiller does nothing in reference to the liquor to get it on the shelves of the stores after it is loaded on the cars and starts for Ohio. It is testified on pages 26 and 27 that direct purchase liquor and bailment liquor are handled in the same way. It is testified that the distillers pay storage, insurance and truckage charges; that the state auditor checks the smaller amounts of direct purchase stock, but does not check the bailment stock and that it is understood that the bailment stock is in storage for the particular dealer it represents. In answer to question on page 65, "May the liquor in the warehouse be disposed of in any other manner than by the withdrawals by the Department of Liquor Control? A. Only for sample purposes or for transfer to another warehouse or for shipment back out of the state."

It is testified that these back shipments are very insignificant in amount. One witness, page 70, testifies that he represents the warehouses in relation to the Department of Liquor and that the relationship between the warehouses and the distiller is not determined by the contract with the state.

If and where this testimony differs from the agreed statements or the admissions in the pleadings the latter will prevail.

## THE LAW
### Foreign Corporation.

The petition asks for a declaratory judgment determining the rights of the plaintiff and determining whether the plaintiff is or is not doing business within the State of Ohio within the meaning of the Ohio Foreign Corporation Act, and determining whether it is subject to the penalties and requirements of said Act.

The Foreign Corporation Act comprises §8625-1, et seq. GC.

—3 of the section provides that the Act shall not apply to corporations engaged in this state solely in interstate commerce.

—4 provides, no foreign corporation not excepted shall transact business under the provision of the Act without holding a license.

—25 provides for penalties for a foreign corporation required to be licensed which transacts business in the state without a license.

### Sales Act.

The law as to sales in Ohio is found under §8381 et seq GC. §8381 GC defines a contract to sell goods and the sale of goods, the latter being defined "a sale of goods is an agreement whereby the seller transfers the property in goods to a buyer for a consideration called a price."

Sec 8397 GC provides that when there is a contract to sell unascertained goods no property is transferred to the buyer until the goods are ascertained. §8398 GC provides that when there is a contract to sell specific goods the property is transferred to the buyer at such time as the parties to the contract intended it to be transferred, and for the purpose of ascertaining the intention, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case.

Sec 8399 GC provides that if a contract to sell requires the seller to deliver the goods to the buyer or at a particular place or to pay the freight or costs of transportation to the buyer or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed on.

Title passes when nothing remains to be done by the seller before delivery. Delivery to a carrier ordinarily passes title, but whether it does depends on the intention of the seller.

Sec 8400 GC provides in substance that when goods are shipped, and by the bill of lading are deliverable to the order of the buyer or his agent, but possession of the bill of lading is retained by the seller or his agent, the seller thereby reserves the right to the possession of the goods as against the buyer.

**The Liquor Laws.**

This chapter is found under §6064-1 et seq. GC. By-8 it is provided that the Department of Liquor Control shall have power to control traffic in intoxicating liquor in this state including the manufacture, importation and sale thereof.

—12 provides the department shall sell spirituous liquor only, whether from a warehouse or from a state liquor store.

—14 provides that no person shall keep or possess for sale intoxicating liquor unless such person shall have fully complied with the provisions of the Act and shall be the holder of a permit issued by the Department of Liquor Control and in force at the time.

—15 gives a list of the various permits issued for those engaged in different pursuits in reference to liquor.

It is agreed that plaintiff in this case holds no permit of any kind but it is asserted that as a foreign distiller he needs no permit to sell to the State of Ohio.

**Defendant's Claim.**

It is claimed by the defendant that the transactions above detailed make the plaintiff amenable to the Foreign Corporation Act as one doing business in the State of Ohio, whereas, as before stated, the plaintiff claims that the entire transaction was complete so far as it was concerned in the State of New York and that the merchandise becomes a subject of interstate commerce.

Both sides have filed impressive briefs and cited numerous cases which the court has examined.

We discover quite a number of cases cited by counsel for defendant which we do not think are applicable to the state of facts in that they are cases in which the courts have held that the parties were engaged in intrastate commerce by reason of the fact that they sold their goods or engaged in business with various individuals after the goods came to rest within the limits of the state.

As we understand it there is no claim made in this case that the plaintiff was "doing business" with any other individual than the state of Ohio, and that the only business was that necessary to transfer the goods to the state and receive compensation therefore. If the doing business relates to a sale it must be a sale consummated in the State of New York or a sale consummated in the State of Ohio.

Before the development of the "Bailment Plan" business transactions had occurred between the parties concerning which no question was raised as to it being anything other than an interstate transaction pure and simple, not subject to taxation by the State of Ohio. This method of doing business required that the state invest large sums of money in the purchase of liquor to be held in its various warehouses and from which the state could receive no return until the liquor was sold. The change was made for a definite purpose as has been stipulated, "that said plan was adopted for the purpose of enabling said department to conduct its business with an adequate supply of liquor readily available for its needs with a minimum amount of capital necessary for the transaction of its business." This was substantially the statement sent to all distillers in 1935 as disclosed by Exhibit No. 9. If this change in plan made the business formerly transacted as interstate business, intrastate business it was by virtue of the fact that the goods remained the property of the plaintiff until they were finally taken out of storage and delivered to the various stores. In examining the contract between the State

of Ohio and the warehouseman we are of the opinion that it discloses clearly that at the time it was made it contemplated a control of the liquor in storage by the department to the exclusion of any control by the seller. As stated before, the warehouse contract was made prior to the inception of the Bailment Plan, but we have no reason to conclude that there was any change in the purpose or intention of the state to continue to exercise control over the liquor. It is true there are some incidental matters done by the plaintiff which might be indicia of ownership, such as paying the insurance and for the truckage when the liquor is delivered to some other warehouse than that in which it originally reposed.

There is also the statement in the Bailment Plan that "the merchandise is your property until withdrawn by the Department of Liquor Control" and also "as it is their property until withdrawn from bailment."

It may also be urged that due to the fact that the shipper pays the warehouse storage it thereby exercised control, but the storage fees are recovered by the shipper by adding them to the quoted price of the liquor so that the shipper was not out of pocket on account of storage charges for the first month and for subsequent months the charge for storage was a protection against too heavy a consignment and against slow moving liquor.

"Transacting Business" certainly means something more than that indicated by the limited control the shipper had of the goods after they reached the designated warehouse. The Sales Act does not require that the title shall pass immediately, but it provides rules by which the transfer shall be considered as complete.

If the seller was transacting business in the State of Ohio it was doing business by virtue of the sale of intoxicating liquor to the State of Ohio, made within the State of Ohio. We find no permit appropriate to this Act and we cannot bring ourselves to the viewpoint that when the liquor act contemplates a monopoly of sales by the state, that the state can insist that the plaintiff without a permit and without any authority to do so is as a matter of fact selling intoxicating liquor within the State of Ohio. Having this view of the case we concur in the view of the court below. Judgment affirmed.

BARNES, PJ, and HORNBECK, J, concur.