SCHENLEY AFFILIATED BRANDS CORPORATION, APPELLANT, *v.*
LIMBACH, TAX COMMR., APPELLEE.
GLENMORE DISTILLERIES COMPANY, APPELLANT, *v.*
LIMBACH, TAX COMMR., APPELLEE.

[Cite as Schenley Affiliated Brands Corp. *v.* Limbach (1989),
45 Ohio St. 3d 90.]

(Nos. 88-206 and 88-207—Submitted May 3, 1989—Decided August 23, 1989.)

*Benesch, Friedlander, Coplan & Aronoff, James F. DeLeone* and *N. Victor Goodman,* for appellants.

*Anthony J. Celebrezze, Jr.,* attorney general, *Richard C. Farrin* and *Barton A. Hubbard,* for appellee.

SWEENEY, J. Upon ratification of the Twenty-First Amendment to the United States Constitution and the consequent enactment of the Ohio Liquor Control Act of 1933, the ODLC has exercised exclusive control over the manufacture, distribution and sale of liquor within the state of Ohio.

In *State, ex rel. Fisher,* v. *Ferguson* (1943), 142 Ohio St. 179, 27 O.O. 25, 50 N.E. 2d 992, this court held in paragraph one of the syllabus:

"Broad powers are conferred upon the Department of Liquor Control of the State of Ohio by the Liquor Control Act, * * * for the expressed purpose of enabling such department to establish and maintain a state monopoly of the distribution of spirituous liquor and the sale thereof in packages or containers. * * *"

The central issue posed in the instant appeal is whether the spirituous liquor inventory stored in the ODLC designated warehouses under the bailment stock plan is subject to the personal property tax of this state. Taxable personal property includes all non-exempt personal property located and used in business in the state of Ohio. R.C. 5709.01(B)(1).

The appellants contend that the transactions are sales, not bailments, and that the sales are complete when the liquor is delivered to a carrier for shipment to an ODLC designated warehouse. Appellants submit that they then have no control over the liquor and that it can be moved only by the ODLC. Appellants argue that under the Uniform Commercial Code ("UCC"), the bailment stock plan is really a contract to sell goods at a future time and/or a sale and return, which becomes a sale,[2] and thus vests title to the liquor with the ODLC. In support of their arguments, appellants rely on the decisions handed down by the Franklin County Court of Appeals in the *Bluebell* cases.

While appellants' arguments are facially logical, the terms of the bailment stock agreement compel a different conclusion.

R.C. 1302.42, which embodies the UCC section governing the passing of title, provides in pertinent part:

"(B) *Unless otherwise explicitly agreed,* title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods * * *." (Emphasis added.)

Here, the parties have in fact explicitly agreed otherwise. In order to do business in this state, the appellants-vendors must agree to the rules established by the ODLC. Under the terms of the bailment stock plan, the appellants have explicitly agreed to when title to the liquor will pass to the ODLC. The opening paragraph of the bailment stock plan provides as follows:

"The vendor will send a Price Quotation (Form #184) to the Department of Liquor Control for approval. If approval is granted, it will be the vendor's responsibility to maintain an inventory at each of our warehouses so that the merchandise can be pulled for shipment to our sales outlets, as demand requires. *The Department will take title to the merchandise when it is pulled from warehouse stock.*" (Emphasis added.)

Part II of the bailment stock plan further provides in relevant part:

"The merchandise is to be consigned to the vendor in care of the warehouse to which the consent is issued. *It remains the property of the vendor until withdrawn by the Department of Liquor Control.* The Department pays no storage or warehouse charges on any merchandise in bailment stock other than the charge which is included in the quoted price." (Emphasis added.)

In addition, the section of the bailment stock plan entitled "Insurance on Warehouse Stock" provides:

"Insurance charges on merchandise in bailment is [*sic*] the responsibility of the vendor, inasmuch as such merchandise remains the property of the vendor until withdrawn from bailment stock."

---

[2] The portion of the UCC to which appellants refer is found in R.C. 1302.39, which provides in pertinent part:

"(A) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is:

"* * *

"(2) a 'sale or return' if the goods are delivered primarily for resale.

"* * *

"(D) Any 'or return' term of a contract for sale is to be treated as a separate contract for sale within section 1302.04 of the Revised Code and as contradicting the sale aspect of the contract within the provisions of section 1302.05 of the Revised Code."

Obviously, the foregoing provisions of the bailment stock plan contemplate ownership of the inventory by the vendor until the warehouse operator "pulls" such inventory from the warehouse for shipment to the ODLC. The terms of this agreement between the ODLC and the appellants could not be clearer on these particular points. As mentioned before, appellants complain that, since they have virtually no control over the liquor once it is shipped into Ohio, they cannot be held to be owners of the inventory in any respect because their role under the bailment stock plan exhibits few, if any, indicia of ownership. However, as the appellee-Tax Commissioner points out, appellants, in this vein, confuse regulation with ownership. While under the bailment stock plan appellants may not move any inventory without the approval of the ODLC, two points of elaboration are in order. First, spirituous liquors in Ohio are controlled substances and the ODLC, in the exercise of its role of controller, must be apprised of all movement of spirituous liquor within this state. Second, the testimony of both parties' expert witnesses below indicated that, to their knowledge, consent to move liquor had never been refused by the ODLC.

We also find the decisions rendered in the two *Bluebell* cases to be inapplicable to the cause *sub judice.* A review of those decisions reveals that little analysis was employed by the court in arriving at the holdings. Moreover, it is apparent that applying the decisions in the *Bluebell* cases would make little sense at this juncture, since appellants and the ODLC have expressly agreed to which party holds title to the liquor under the bailment stock plan.

Last, we would be remiss if we did not point out that effective March 6, 1986, the General Assembly excepted from tax the spirituous liquor stored in warehouses under agreement with the ODLC. This new statutory enactment embodied in R.C. 5709.01 provides in relevant part:

"(C) The following property of the kinds mentioned in division (B) of this section shall be exempt from taxation:

"* * *

"(2) Spirituous liquor, as defined in division (B)(5) of section 4301.01 of the Revised Code, that is stored in warehouses in this state pursuant to an agreement with the department of liquor control."

In Section 4 of the Act which amended the foregoing statutory section, *i.e.,* Am. Sub. H.B. No. 274, 141 Ohio Laws, Part II, 3085, 3089-3090, the legislature stated as follows:

"By the amendment of section 5709.01 of the Revised Code, and in particular the amendment of division (C)(2) of such section, it is the sense of the General Assembly that *the law applicable to tax years prior to 1986 and the prior court interpretations of that law concerning the tax on tangible personal property,* to wit: spirituous liquors maintained in inventory in this state under an agreement with the Department of Liquor Control, where such spirituous liquors are placed in warehouses or warehouse space leased by the Department, *shall speak for themselves and that this amendment of section 5709.01(C)(2) is not intended to repeal or affirm such law or court decisions.*

"By this enactment, the General Assembly does not create a claim for refund for a taxpayer who paid tangible personal property taxes prior to the effective date of this act on spirituous liquor held under the Department of Liquor Control bailment plan in warehouses leased by the Department

and located in this state." (Emphasis added.)

Since we have found the *Bluebell* cases not to be the applicable law with respect to inventory stored in warehouses under the bailment stock plan, it necessarily follows that the tax years in issue are governed by standard contract and commercial law, which subjects such inventories to the tangible personal property tax of this state.

Therefore, we hold that prior to March 6, 1986, the effective date of R.C. 5709.01(C)(2), spirituous liquor inventory stored in Ohio warehouses for potential future sale to the Ohio Department of Liquor Control under the department's bailment stock plan agreement was the property of the vendor and was therefore subject to the tangible personal property tax.

Based on the foregoing, the decisions of the BTA are hereby affirmed.

*Decisions affirmed.*

MOYER, C.J., H. BROWN and RESNICK, JJ., concur.

HOLMES, DOUGLAS and WRIGHT, JJ., dissent.

WRIGHT, J., dissenting. I respectfully suggest that the so-called Bailment Stock Plan initiated by the Ohio Department of Liquor Control ("ODLC") is nothing more or less than a contract to sell goods at a future time, and in certain circumstances a sale and return. The undisputed facts in this case militate for such a finding.

It is beyond dispute that the sales involved in this case are commercial transactions and that the law as codified in R.C. Title 13 is controlling. Among the provisions of the Uniform Commercial Code relevant to this controversy are R.C. 1302.01(A)(1) and (A)(4), which respectively define the terms "buyer" and "seller" as "a person who buys *or contracts to buy* goods" or "sells *or contracts to sell* goods." (Emphasis added.) R.C. 1302.01(A)(11) states:

" 'Contract' and 'agreement' are limited to those relating to the present or future sale of goods. 'Contract for sale' includes both a present sale of goods and a contract to sell goods at a future time. A 'sale' consists in the passing of title from the seller to the buyer for a price. A 'present sale' means a sale which is accomplished by the making of the contract."

R.C. 1302.39 provides:

"(A) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is:

"* * *

"(2) a 'sale or return' if the goods are delivered primarily for resale.

"* * *

"(D) Any 'or return' term of a contract for sale is to be treated as a separate contract for sale within section 1302.04 of the Revised Code and as contradicting the sale aspect of the contract within the provisions of section 1302.05 of the Revised Code."

The Tax Commissioner has suggested that the aforementioned stock plan imposed by the ODLC is not a contract to sell goods at a future time. The commissioner fails, however, to explain why she has adopted such a posture. Regardless of the label affixed to a certain fact situation by the commissioner or indeed the taxpayer, it is the duty of this court to scrutinize the nature of the particular relationship and reach a conclusion about that relationship's legal implications. I agree with the appellants that it is obvious that, by the arrangement which led to the transshipment of spirituous liquor to warehouses located in Ohio and designated by the ODLC, it was contem-

plated by both the taxpayers and by the ODLC that stocks placed in such warehouses under the plan would be ultimately sold by the department and by the department only, either through its wholesaler or its retail stores. It was clearly contemplated that these alcoholic beverages would be exchanged for money, and were not shipped into Ohio for storage only and for ultimate return to the vendor. The appellant is quite correct that a bailment, by definition, requires the return of the bailed goods to the bailor in the form in which they were delivered to the bailee. These transactions clearly constituted a contract for a future sale coupled with delayed payment of the price at the will of the ODLC. See *Bluebell Importing Corp.* v. *Myers* (App. 1938), 27 Ohio Law Abs. 377, 13 O.O. 124, 31 N.E. 2d 227.

The plan adopted by the ODLC is the primary method by which the vendor may sell its products in Ohio. The ODLC negotiates and executes the contracts with the various warehousemen throughout the state and the vendor has no contractual relations with any of the warehousemen. Further, the vendor must use the warehouses designated by the department as a designated termination and storage point for the stocks brought into Ohio for sale to the ODLC. Further, the record indicates that the vendor ships the goods to the warehouses with the ODLC in effect paying for the freight. Under the plan the department continually adjusts the price to the vendors keyed to the end of paying said freight. On arrival at the warehouses, a vendor's products are stored in a location convenient to the state and held for the exclusive purpose of being applied to withdrawal orders issued by the ODLC. The warehousemen may not honor any order of removal except those which come from the liquor department, with sole custody of the stock resting in the warehousemen and sole right of disposal resting in the ODLC.

Finally, it should be noted that the vendor surrenders all rights to control or dispose of any part of the stock while it remains in the warehouse and may not withdraw such stock for shipment out of state or transfer the stock from one warehouse to another without the authorization of the department. I respectfully suggest that this court should apply the provisions of the Uniform Commercial Code to this transaction and, if it does so, the court will have no other alternative but to reverse the posture adopted by the Tax Commissioner.

For all the reasons noted above, the decisions of the Board of Tax Appeals should be reversed.

HOLMES and DOUGLAS, JJ., concur in the foregoing dissenting opinion.